UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                                                                    Case No. 24-cr-6-jdp

JAMES MORGAN,

        Defendant.

---

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

The United States of America hereby responds to defendant's motion to dismiss the indictment. (Dkt. 22). The defendant's motion should be denied as the constitutionality of 26 U.S.C. § 5861(d) as applied to destructive device cases is well-settled. *See, e.g.*, *United States v. Copus*, 93 F.3d 269, 276 (7th Cir. 1996). Nothing in *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012), or *Department of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767 (1994), undermines the binding precedent in *Copus*. Courts in other circuits have rejected arguments that these two cases call into question prior case law upholding § 5861(d). *See United States v. Bolatete*, 977 F.3d 1022 (11th Cir. 2020); *United States v. Cox*, 906 F.3d 1170 (10th Cir. 2018); *United States v. Boggess*, 511 F. Supp. 3d 735 (S.D.W. Va. 2021).

### THE FIREARMS ACT

Defendant is charged with possessing six unregistered destructive devices, in violation of 26 U.S.C. § 5861(d). The charged statute is part of a comprehensive taxing

1

scheme called the National Firearms Act. The National Firearms Act (Firearms Act), 26 U.S.C. 5801 et seq., enacted in 1934, imposes a federal tax on the manufacture, sale, and transfer of "firearm[s]." The Firearms Act defines "firearm" to include, among other items, short-barreled shotguns, machineguns, bombs, destructive devices, grenades, and silencers. 26 U.S.C. 5845 (2012). The Firearms Act's definition does not include commonly used weapons such as handguns, shotguns, and rifles, or commonly used accessories such as bullets. *See ibid*. Items included in the list are commonly referred to as "NFA firearms." The Firearms Act requires manufacturers, importers, and dealers of NFA firearms to register and pay an occupational tax. 26 U.S.C. §§ 5801, 5802.

The Firearms Act also requires registration with the National Firearms Registration and Transfer Record and payment of an excise tax of $200 upon the manufacture, importation, or transfer of an NFA firearm. 26 U.S.C. §§ 5811, 5812, 5821, 5822, 5841. The Firearms Act does not, however, prohibit the manufacture, sale, or possession of properly registered and taxed NFA firearms. It is a criminal offense, punishable by up to ten years in prison and a $10,000 fine, to fail to comply with the requirements of the NFA or to possess an NFA firearm that has not been properly registered. 26 U.S.C. §§ 5861(d), 5871.[1]

In 1937, the United States Supreme Court upheld the Firearms Act as a valid exercise of Congress's taxing power. *Sonzinsky v. United States*, 300 U.S. 506. In the

---

[1] Individuals who wish to legally manufacture, store, distribute, receive, or transport explosive materials must obtain a federal explosives license or permit (FEL/FEP). https://www.atf.gov/explosives/illegal-explosives/Explosives Menu/Apply for a License.

*Sonzinsky* case, the Court upheld the taxation and registration provisions of the Act as a legitimate exercise of Congress's taxing power, and it expressly rejected the argument that the transfer tax imposed by the Act "is not a true tax, but a penalty imposed for the purpose of suppressing traffic in a certain noxious type of firearms." 300 U.S. at 512-14.

Since *Sonzinsky*, defendants have continued to challenge whether the Act is within Congress's broad taxing powers. Courts have universally rejected these challenges and upheld the Firearms Act as constitutional. *See, e.g.*, *United States v. Dodge*, 61 F.3d 142, 145-146 (2d Cir. 1995); *United States v. Grier*, 354 F.3d 210, 213-214 (3d Cir. 2003); *United States v. Aiken*, 974 F.2d 446, 448-450 (4th Cir. 1992); U*nited States v. Gresham*, 118 F.3d 258, 261-262 (5th Cir. 1997); *United States v. Thompson*, 361 F.3d 918, 920-922 (6th Cir. 2004); *United States v. Lim*, 444 F.3d 910, 912-914 (7th Cir. 2006); *United States v. Village Ctr.*, 452 F.3d 949, 950 (8th Cir. 2006); *United States v. Giannini*, 455 F.2d 147, 148 (9th Cir. 1972) (per curiam); *United States v. Spoerke*, 568 F.3d 1236, 1245 (11th Cir. 2009).

Defendants did find success challenging the constitutionality of 26 U.S.C. § 5861(d) as applied to cases involving machine guns. *See* e.g., *United States v. Dalton*, 960 F.2d 121 (10th Cir. 1992); *United States v. Rock Island Armory, Inc.*, 773 F. Supp. 117, 125 (C.D. Ill. 1991). In 1986, it became illegal to possess or transfer a machinegun, 18 U.S.C. § 922(o). The Tenth Circuit in *Dalton* addressed whether due process permitted Dalton to be convicted of a violation of § 5861(d), transferring an unregistered machinegun, when a separate law, § 922(o), prohibited the registration. 960 F.2d at 122. The court reasoned that to avoid violating § 5861(d), Dalton would have had to register the machinegun

and pay the tax. *Id.* at 123. But § 922(o) required that any application to register the machinegun be denied. So, the court found § 922(o) made the compliance requirements for § 5861(d) legally impossible. *Id.* at 125. The *Dalton* court found that it was fundamentally unfair to convict Dalton under § 5861(d). The court also found that the passage of § 922(o) ended the Act's registration and taxation requirements and by doing so, removed the constitutional basis for § 5861(d). *Id.* The court concluded that § 922(o) had implicitly repealed the Act's registration and taxation provisions for machineguns. *Id.* at 126.

Other circuits that considered the constitutionality of § 5861(d) in machinegun cases rejected *Dalton's* reasoning and came to the opposite conclusion. These courts found that Congress had the authority to tax illegal activity and that it was possible to comply with § 5861(d) by not violating § 922(o), that is, by not possessing or manufacturing machineguns. *See, e.g., United States v. Ross*, 9 F.3d 1182, 1194 (7th Cir. 1993), *cert. granted*, judgment vacated on other grounds, 511 U.S. 1124 (1994); *United States v. Ardoin*, 19 F.3d 177, 179-180 (5th Cir. 1994); *United States v. Grier*, 354 F.3d at 214; *Hunter v. United States*, 73 F.3d 260, 261-62 (9th Cir. 1996); *United States v. Jones*, 976 F.2d 176, 182-83 (4th Cir. 1992).

Even the Tenth Circuit when examining *Dalton* again in *United States v. Cox*, a short-barreled shotgun case, clarified that it was § 922(o)'s outright prohibition on machineguns that created the constitutional issue in *Dalton*, and that there would be no such issue in cases involving other NFA firearms. 906 F.3d at 1183. The court said that unless there was a separate criminal statute that criminalized the possession of the NFA

firearm at issue, "a due process or taxing power challenge to a § 5861(d) conviction is doomed to fail." *Id.* at 1182.

SEVENTH CIRCUIT CASES

In *United States v. Copus*, the Seventh Circuit upheld the constitutionality of § 5861(d) in a case involving a silencer and a destructive device. 93 F.3d at 276. In doing so, the court rejected the defendant's argument that Congress's taxing power no longer justified the registration and tax provisions related to § 5861(d) & (f) because the passage of 18 U.S.C § 922 made compliance with § 5861(d) impossible. *Id.* The court distinguished *Dalton* because there was no provision like § 922(o) that completely banned silencers or destructive devices. *Id. See also United States v. Ross*, 9 F.3d at 1194 (rejecting *Dalton* and upholding constitutionality of § 5861(d) as applied to machine gun case); *United States v. Gresham*, 118 F.3d 258, 263 (5th Cir. 1997) (no federal statute completely outlaws the possession of destructive devices; therefore, their registration is not legally impossible, citing *Copus* and other cases).

In *United States v. Lim*, the Seventh Circuit upheld the constitutionality of § 5861(d) in a case involving a short-barreled shotgun. 444 F.3d at 912-14. Again, the court rejected the logic of *Dalton* because there was no statutory ban on the registration of short-barreled shotguns. *Id*. at 913-14. The court also found that it was irrelevant that Lim could not "*personally* register or pay the tax on the shotgun." *Id*. (emphasis in original).

Notably, the Seventh Circuit in *Lim* also rejected Lim's broader argument that § 5861(d) exceeded Congress's taxing authority because the purpose of the statute was

5

not to tax, but to prohibit possession of certain firearms. The court expressly found that, when taken in context with the rest of the statute, section 5861(d) could reasonably be construed as "part of the web of regulation aiding enforcement of the transfer tax provision in section 5811." *Id.* at 913 ("Attaching criminal consequences to the possession of an unregistered weapon is thus a rational way of discouraging the transfer of untaxed firearms.") (internal quotation and citation omitted). The court further found that § 5861(d) was a constitutional exercise of Congress's taxing power because it "encourage[d] registration and reinforce[d] the revenue-generating purpose of the [Firearms] Act." *Id.*

## *KURTH RANCH* AND *SEBELIUS*

In *Department of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767, 784 (1994), the Supreme Court held that Montana's tax on the possession of illegal drugs was a punishment for the purposes of double jeopardy analysis. Acknowledging that "the unlawfulness of an activity does not prevent its taxation," the Court still found that where a tax has punitive characteristics, it will be subject to the constraints of the Double Jeopardy Clause. *See Id.* at 778-79.

In *Federation of Independent Businesses v. Sebelius*, 567 U.S. 519, 561-574 (2012), the Supreme Court considered whether Congress had the power under Article I of the Constitution to enact a provision in the Affordable Care Act providing that non-exempted federal income taxpayers who fail to maintain a minimum level of health insurance for themselves or their dependents will owe a tax penalty. The Court upheld the minimum coverage provision as a valid exercise of Congress's Article I taxing

power. *Id.* at 574.

In determining whether the mandate was a tax or a penalty, the Court ignored the fact that Congress labeled it a "penalty" rather than a "tax." *Id.* at 564. The Court rejected Congress's label in favor of a "functional approach." *Id.* at 565-66. The Court cited its rationale in *Drexel Furniture* as an example of this type of functional approach. *Id.* (citing *Bailey v. Drexel Furniture Co. (Child Labor Tax Case)*, 259 U.S. 20 (1922)).

The *Sebelius* Court explained that in *Drexel*, the Court focused on three practical characteristics of the so-called tax on employing child laborers to find the "tax" was a penalty. First, the tax imposed an exceedingly heavy burden—10 percent of a company's net income—on those who employed children, no matter how small their infraction. *Id.* (citation omitted). Second, it imposed that exaction only on those who knowingly employed underage laborers. *Id.* The Court reasoned that scienter requirements are typical of punitive statutes, because Congress often wishes to punish only those who intentionally break the law. *Id.* Third, the Court found that the "tax" was enforced in part by the Department of Labor, an agency responsible for punishing violations of labor laws, not collecting revenue. *Id.*

The Court than drew a distinction between the "tax" in *Drexel Furniture* and the individual mandate, finding for the mandate the financial burden wasn't too high compared to the cost of insurance, the mandate contained no scienter requirement, and payment for failing to obtain insurance was collected solely by the IRS through the normal means of taxation. *Id.* at 566.

In upholding the mandate as a tax, the Supreme Court did recognize the obvious:

7

"None of this is to say that the payment is not intended to affect individual conduct. Although the payment will raise considerable revenue, it is plainly designed to expand health insurance coverage." *Id*. at 567.

ARGUMENT

As explained by the Supreme Court in *Sonzinsky*, the Seventh Circuit in *Copus* and *Lim*, and the Fifth Circuit in *United States v. Ross*, 458 F.2d 1144, 1145 (5th Cir. 1972), § 5861(d) is considered part of the web of regulation aiding in the enforcement of the transfer tax provisions contained in 26 U.S.C. § 5811. *Sonzinsky v. United States*, 300 U.S. at 512; *United States v. Copus*, 93 F.3d at 276. Defendant identifies no sound reason to revisit this precedent. Because Congress has required payment of a transfer tax, and registration as an aid in collection of that tax, Congress, under its taxing power, may reasonably impose a penalty on the possession of unregistered weapons.

Registration and a penalty imposed on transferees ultimately discourages the transferor on whom the tax is levied from transferring a firearm without paying the tax. *Accord United States v. Copus*, 93 F.3d at 275-76; *United States v. Aiken*, 974 F.2d 446 (4th Cir. 1992); *United States v. Birmley*, 529 F.2d 103, 106-107 (6th Cir. 1976); *United States v. Giannini*, 455 F.2d 147, 148 (9th Cir. 1972). As such, prosecution of Morgan as a possessor of six unregistered homemade destructive devices serves the overall tax strategy of the Firearms Act.

Defendant here contends that if the Supreme Court were to consider the Firearms Act today, in light of *Sebelius* and *Kurth Ranch*, it wouldn't reach the same decision as it did in *Sonzinsky*. (Def. Brief at p. 10). But, since *Sebelius*, which was

decided after *Kurth Ranch*, the Court has twice denied petitions for certiorari where one of the issues raised was whether § 5861(d) was within Congress's taxing authority. *See United States v. Bolatete,* 977 F.3d 1022 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 1754, 209 L. Ed. 2d 514 (2021)) (finding prior precedent controlled and rejecting defendant's argument that § 5861(d) was not within taxing authority under analytical approach outlined in *Sebelius*); *United States v. Cox*, 906 F3d 1170 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 2690, 2691, 204 L. Ed. 2d 1090 (2019) (considering principles in *Sebelius* and still affirming that Firearms Act is "a valid exercise of Congress's power").

*Kurth Ranch* was decided in 1994, before *Copus* and *Lim*, so the Seventh Circuit already had the opportunity to consider the holding of *Kurth Ranch* when evaluating whether § 5861(d) was within Congress's taxing power. *Sebelius* was decided in 2012 and every court to consider whether *Sebelius* undermined previous precedent upholding § 5861(d) has said no. *See United States v. Bolatete,* 977 F.3d 1022 (11th Cir. 2020) (*cert. denied*, *Bolatete v. United States*, 141 S. Ct. 1754, 209 L. Ed. 2d 514 (2021)) (finding prior precedent controlled and rejecting defendant's argument that § 5861(d) was not within taxing authority under analytical approach outlined in *Sebelius*); *United States v. Cox*, 906 F3d 1170 (10th Cir. 2018) (*cert. denied*, *Cox v. United States*, 139 S. Ct. 2690, 2691, 204 L. Ed. 2d 1090 (2019) (considering principles in *Sebelius* and affirming that Firearms Act is "a valid exercise of Congress's power"); *United States v. Boggess*, 511 F. Supp.3d 735, 742 (S.D. West Virginia 2021) (application of the "functional framework" of *Sebelius* did not take case outside of the holdings of previous cases upholding § 5861(d)).

9

There is nothing to suggest that *Kurth Ranch* or *Sebelius* undermines previous Supreme Court precedent in *Sonzinsky* upholding the constitutionality of § 5861(d). Moreover, *Sebelius* does not overrule, or even call into question, the holdings of Seventh Circuit cases *Copus* and *Lim* finding the same. *See United States v. Cox*, 906 F.3d at 1183 ("Although times have changed since the Court decided *Sonzinsky* in 1937, [defendants] point to no differences, either in the [Firearms Act] or in courts' understanding of the national taxing power, that justify departing from *Sonzinsky's* conclusion that the [Firearms Act] is a valid exercise of Congress's power.").

If anything, *Kurth Ranch* and *Sebelius* reinforce general principles supportive of the government's position. For example, the cases reaffirm *Sonzinsky's* general principle that "a tax is not any the less a tax because it has a regulatory effect." 300 U.S. at 513. "Every tax is in some measure regulatory. To some extent it interposes an economic impediment to the activity taxed as compared with others not taxed." *Ibid. See Sebelius*, 567 U.S. at 567 ("[T]axes that seek to influence conduct are nothing new."); *Kurth Ranch*, 511 U.S. at 787 ("It is * * * firmly established that taxes may be enacted to deter or even suppress the taxed activity.").

Significantly, *Sebelius* commented favorably on the Firearms Act. As the Tenth Circuit observed, "Only six years ago, *Sebelius* reaffirmed the [Firearms Act's] constitutional legitimacy, touting the statute's 'obviously regulatory' tax on sawed-off-shotguns as proof that 'taxes that seek to influence conduct are nothing new' and remain valid exercises of taxing power." *United States v. Cox*, 906 F.3d at 1181 (citing *Sebelius*, 567 U.S. at 567).

10

In *United States v. Boggess*, 511 F. Supp.3d at 740-41, the district court considered and ultimately rejected the same arguments made by defendant in this case. Like this case, in *Boggess*, the defendant argued that *Sonzinsky* was no longer good law because the Firearms Act had changed since its original enactment and that, under the framework in *Sebelius*, § 5861(d) was now "an unconstitutional penalty, not supported by any power of Congress, rather than a tax." *Id.* at 740.

In support of his argument, Boggess asserted that: 1) the burden imposed by § 5861(d) was unreasonably high; 2) the statute had a scienter requirement; and 3) the Firearms Act is administered by the Department of Justice rather than the Department of the Treasury. *Id*.

Before addressing Boggess's arguments, the court first categorized what the court viewed as two distinct portions of the Firearms Act, the taxes portion and the enforcement mechanisms portion. *Id.* The court defined the taxes portion as those laws that provide for an annual occupational tax on firearms' importers and manufacturers ($500 or $1,000), a transfer tax on anyone who transfers a firearm ($5 or $200), and a making tax on anyone who makes a firearm ($200). *Id.* The court noted that these taxes raised over $44 million in 2019. *Id.*[2]

The court next defined the enforcement mechanism portion of the Firearms Act as including "enforcement mechanisms that induce firearms makers, importers, and

---

[2] The court cited https://www.atf.gov/firearms/docs/reports/firearmscommercereport2020pdf/download).

11

transferors to pay the taxes applicable to them. *Id.* These enforcement mechanisms include the National Firearms Registration and Transfer Record and criminal penalties." *Id.*

After defining the separate portions of the Firearms Act, the court addressed and then rejected each of Boggess's arguments. *Id*. at 740-741. The court rejected his argument that the criminal penalties for violations amounted to an impermissible burden under the *Sebelius* framework. *Id.* at 740. The court explained that when examining the burden imposed, the burden to be examined is the tax burden: "The burden at issue is the burden imposed by the occupational, making, and transfer taxes of the Firearms Act, not the burden imposed for failing to comply with the Firearms Act." *Id.* When examining the taxes, the court found the taxes to be reasonable. The court found the criminal penalties were designed to ensure that the taxes are complied with. *Id.*

The court also rejected Boggess's argument that because *United States v. Freed*, 401 U.S. 601, 610 (1971), and *Staples v. United States*, 511 U.S. 600, 619 (1994), added a scienter requirement to a criminal prosecution under § 5861(d), under *Sebelius*, enforcement is a penalty and not a tax. *Id.* The court pointed out that the defendant was again attempting to apply *Sebelius's* functional framework to the penalty for failing to pay the tax rather than applying it to the tax itself. *Id.* The requirement for the government to prove in a criminal prosecution that the defendant knew the features of the firearm brought it within the scope of the Firearms Act was not a requirement for the tax itself to apply. *Id.* "Any firearm within the scope of the Firearm Act is subject to

12

the maker tax unless exempted by statute, regardless of whether the responsible party knows that the firearm is within the scope of the Firearms Act." *Id.*

Drawing an analogy to penalties elsewhere in the tax code, the court noted that the statute that makes tax evasion a punishable offense, 26 U.S.C. § 7201, includes a scienter requirement of willfulness. The court reasoned, "One could not argue that the scienter requirement of tax evasion applies to the base tax in question." *Id.* The court ultimately found that because "the scienter requirement of *Freed* and *Staples* does not relate to the tax itself, . . . the scienter requirement for prosecution under § 5861(d) does not turn any of the three taxes imposed by the Firearms Act into an unconstitutional penalty." *Id.*

The court next briefly addressed Boggess's argument that the tax scheme in the Firearms Act was overseen by the Bureau of Alcohol, Tobacco, and Firearms. *Id.* at 741-42. The court found that that factor cut in favor of the defense's position, but nevertheless found that no further analysis was warranted because on balance the taxes imposed by the Firearms Act remained a legitimate exercise of Congress's taxing power. *Id.* The court also found that the enforcement mechanisms were reasonably related to the taxing power and revenue generation. *Id.*

Based on prior case law, including binding precedent in this circuit, defendant's arguments in this case lack merit and his motion should be denied. As the *Boggess* court observed, the *Sebelius*-based arguments are critically flawed because the defendant ignores the Firearms Act as a whole and only directs the court to the penalty provisions. The entire tax code has criminal penalty provisions. That obviously doesn't render the

13

tax code or its penalty provisions, outside the power of Congress to tax.

The Firearms Act imposes taxes, which are reasonable and not overly burdensome. The tax amounts vary between $5 and $1,000. The taxes in the Firearms Act do generate revenue. "The essential feature of any tax" is that it "produces at least some revenue for the Government." *Sebelius*, 567 U.S. at 564. A tax that produces at least some revenue remains valid, even if "the revenue obtained is negligible." *United States v. Kahriger*, 345 U.S. 22, 28 (1953), overruled in part on other grounds by *Marchetti v. United States*, 390 U.S. 39 (1968). In 2020, the Firearms Act produced nearly $59 million in occupational and excise taxes. ATF, U.S. Dep't of Justice, Firearms Commerce in the United States: Annual Statistical Update (2021), https://www.atf.gov/firearms/docs/report/2021-firearms-commerce-report/download. By way of comparison, the Firearms Act produced an average of just $5,000 a year around the time this Court upheld it in *Sonzinsky*. *See* 300 U.S. at 514 n.1.

The registration requirements that accompany the Firearms Act are not unconstitutional. The Constitution grants Congress broad authority to enact laws that are "necessary and proper for carrying into Execution" its enumerated powers, including the power to tax. U.S. Const. Art. I, § 8, Cl. 18. And the Supreme Court has held that the Act's "registration provisions" "are obviously supportable as in aid of" the tax provisions. *Sonzinsky*, 300 U.S. at 513.

The Firearms Act also imposes penalties for failure to comply with the tax requirements. But, as courts have repeatedly held, the penalties promote the revenue generating purpose of the act and function as part of a comprehensive scheme to levy

14

and collect taxes upon various transactions involving firearms.

Defendant's final observation, that the Firearms Act taxes are collected by ATF, an agency housed in the Department of Justice rather than the Department of the Treasury, is ultimately unpersuasive. The identity of the "agency" that "administer[s] a tax" does not, by itself, determine "whether that tax is really * * * a tax." *United States v. Cox*, 906 F.3d at 1180. Further, ATF originally was housed within the Department of the Treasury; Congress moved it to the Department of Justice during the reorganization of federal departments that occurred after the attacks of September 11, 2001. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, Tit. XI, § 1111(a)(1), 116 Stat. 2274. Defendant does not explain why the transfer of an agency from one department to another transforms a tax that it collects into something other than a tax.

## CONCLUSION

Defendant's constitutional attack on 26 U.S.C. § 5861(d) must fail. The Supreme Court and the Seventh Circuit have ruled that the law is a valid exercise of Congress's power to tax and defendant fails to distinguish his case from binding precedent.

Dated at Madison, Wisconsin, this 21st day of March 2024.

Respectfully submitted,

TIMOTHY M. O'SHEA
United States Attorney

By:      /s/

MEREDITH P. DUCHEMIN
Assistant United States Attorney

15