UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    *Plaintiff*,

    *vs.*                                    Case No.   24-cr-6-jdp

JAMES MORGAN,

    *Defendant*.

---

### REPLY IN SUPPORT OF MOTION TO DISMISS

James Morgan, by counsel, files this reply in support of the defense's motion to dismiss.

In its response, the government says that this argument is foreclosed by Seventh Circuit precedent, and the reasoning of other Circuits dooms the claim. But the problem with the government's position is that this Circuit's precedent does not deal with this precise issue because none of the cases addressed both *Kurth Ranch* and *Sebelius*.[1] Second, the other Circuit cases don't control and aren't on point. In *Bolatete*, the Eleventh Circuit noted it was bound by a prior panel opinion.[2] And the Tenth Circuit's opinion in *Cox* dealt with a very different scenario involving the intersection of Kansas's gun laws, the Tenth Amendment, and the federal government's power to control aspects of gun sales

---

[1] *Dep't of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767 (1994); *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) ("NFIB").
[2] *United States v. Bolatete*, 977 F.3d 1022, 1033–34 (11th Cir. 2020).

and registrations.[3] It's an interesting but inapposite case. And in *Copus*, the Seventh Circuit was confronted with an entirely different argument.[4] In the Court's words, Copus argued "that 18 U.S.C. § 922 has undermined the constitutional basis of the taxation and registration requirements related to 26 U.S.C. § 5861(d), (f)."[5] That's not this argument.

To be clear, while those cases dealt with the taxing power, in none of them was the question whether a tax that someone can't pay for possessing destructive devices actually a valid tax or instead a pure regulation of conduct. And those cases do not undermine the defense's fundamental argument: Morgan cannot be prosecuted for failing to pay a tax that he could not pay, a tax that doesn't raise any revenue, and a tax that isn't operating as a tax but rather as a pure penalty. If Congress wants to criminalize "destructive devices" with harsh criminal penalties (a logical and understandable goal), then it can do so through its commerce power, but not its taxing power. What follows addresses the government's main point of contention—that nothing has changed in the past nine decades, this is just a tax, and thus there's nothing to see here.

---

[3] *United States v. Cox*, 906 F.3d 1170 (10th Cir. 2018).
[4] *United States v. Copus*, 93 F.3d 269 (7th Cir. 1996).
[5] *Id.* at 276.

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC

I.      **The National Firearms Act is no longer justifiable as an exercise of the taxing power since the factual underpinnings of *Sonzinsky* have eroded away.**

In 1937, the Supreme Court upheld the National Firearms Act of 1934 as a legitimate exercise of Congress's power to lay and collect taxes.[6] There, Sonzinsky argued that the NFA was "not a true tax," but rather that the "cumulative effect" of the NFA's various taxes on manufacturers, dealers, and transfers had a "penal . . . character" and a "prohibitive . . . effect" with "the purpose of suppressing traffic in a certain noxious type of firearms."[7] The Court rejected this challenge, noting that "[e]very tax is in some measure regulatory" and "interposes an economic impediment to the activity taxed."[8] The Court held that "an exercise of the taxing power is not any the less so because the tax is burdensome or tends to restrict or suppress the thing taxed."[9]

The Court gave several reasons for concluding that the original NFA was justified under the taxing power. First, it had none of the characteristics found in other cases in which the Court had struck down a bogus "tax."[10] But the NFA, as it exists in 2024, possesses many if not all of those suspect characteristics. Second, the Court explained that "the subject of the tax described [is not] treated as criminal by the taxing statute."[11] But today the law treats ownership of destructive devices as criminal in ways entirely unrelated to the collection of any "tax." And third, the Court in *Sonzinsky* noted that "the

---

[6] *Sonzinsky v. United States*, 300 U.S. 506 (1937).
[7] *Id.* at 512.
[8] *Id.* at 513.
[9] *Id.*
[10] *Id.*
[11] *Id.*

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC

annual tax of $200 is productive of some revenue."[12] But here, Morgan could not pay the

tax, so no revenue could be raised—an undisputable point that the government ignores.

Although the NFA may once have been a tax with some regulatory effect, today it has

become what Justice Frankfurter colorfully described as a regulation "wrapped . . . in the

verbal cellophane of a revenue measure."[13]

Given the changes outlined in the opening brief and the recent clarification of how

to analyze tax statutes in *Sebelius* and *Kurth Ranch*, the NFA's constitutional basis must

be reexamined. And fleshing out the points highlighted above establishes that this is not

a tax, but a pure regulation of criminal conduct beyond Congress's taxing authority.

First, the tax is not administered by the IRS. In *Sebelius*, the Supreme Court upheld

a tax, observing that it was "collected solely by the IRS through the normal means of

taxation"[14] In contrast, in the *Child Labor Tax Case*, the Court struck down a penalty in

part because enforcement was accomplished "not only by the taxing officers of the

Treasury, the Department normally charged with the collection of taxes, but also by the

Secretary of Labor and his subordinates whose normal function is the advancement and

protection of the welfare of the workers."[15] The enforcement regime in this case is even

less a "tax" than either of those, because the "taxes" are payable not to the IRS but to the

---

[12] *Id.* at 514.

[13] *United States v. Kahriger*, 345 U.S. 22, 38 (1953) (Frankfurter, J., dissenting).

[14] *NFIB*, 567 U.S. at 566.

[15] *Child Labor Tax Case*, 259 U.S. 20, 37 (1922).

ATF. And today, only the Justice Department enforces the NFA, having displaced the Treasury Department. That point, even the government's authorities don't contest.[16]

Second, as it was in *The Child Labor Tax Case*, the penalty is not commensurate with what is normally lodged against a tax violation. There, the Court held that the statute was unconstitutional (in part) because it imposed a "heavy exaction on violators"—a penalty of 10 percent of a business's income if child labor was knowingly used.[17] Here, this statute provides for an exceedingly heavy exaction on violators for possession of a destructive device. Failure to obtain a $200 tax stamp carries a maximum penalty of a $10,000 fine and 10 years' imprisonment—for each unregistered firearm. That is, the cost of all the supplies it took to make Morgan's cardboard devices amounted to roughly less than $60, yet the tax would be $1,200 and the maximum penalty up to $60,000 and 60 years—ten for each device. This criminal sanction is far more severe than other criminal penalties in the nation's tax code. For example, the maximum penalty for tax code violations is five years imprisonment, with other violations carrying three-year or one-year terms.[18] It's worth adding that the "taxes" imposed by the NFA have never been increased from the $200 at issue in *Sonzinsky*. Yet over the past 90 years, inflation's inexorable march means that this $200 "tax" has lost over 95 percent of its value in real dollars.[19] And the penalties set out in § 5871 for failure to pay that small "tax" are, once again, 10 years in prison.

---

[16] *See Bolatete,* 977 F.3d at 1033–34; *Cox*, 906 F.3d at 1180.

[17] *Child Labor Tax Case*, 259 U.S. at 36–37.

[18] 26 U.S.C. § 7201 (5 years), *Id.* § 7206 (3 years); *Id.* § 7203 (1 year).

[19] *CPI Inflation Calculator*, Bureau of Labor Statistics, https://data.bls.gov/cgi-bin/cpicalc.pl?cost1=200&year1=193701&year2=202402 (last visited April 9, 2024).

The gross disproportionality between the penalties and the amount of the "tax" being enforced raises the question: why would Congress penalize violations of § 5861 so ruthlessly, when such a small amount of money is at stake? If not a regulatory law in purpose and effect, why would the government choose to bring felony charges against Morgan for his failure to pay $200? The question answers itself. It is not about the money because this is not a tax. It is a pure criminal regulation.[20]

And third, in *Sonzinsky*, the Court noted that the NFA (as examined in 1937) could be upheld because it contained "no regulation other than the mere registration provisions."[21] But times have changed. Now, the law is designed to prevent payment of the tax in as many instances as possible. Yet real taxes do not operate in this fashion. They're meant to raise revenue.  Although suppression of an activity might be incidental to taxation in that some people will choose to forgo the activity to avoid payment of the tax (think alcohol or cigarette taxes), certainly the goal of a true "tax" should not be calculated to prevent people from paying it. "A pure penalty prevents behavior, thereby raising little revenue . . . . Alternatively, a pure tax permits a person to engage in the taxed conduct . . . . A pure tax dampens conduct but does not prevent it, thereby raising revenues."[22] When examined closely, § 5861 constitutes such a "pure penalty." In other words, it's not a tax and can't be enforced through Congress's taxing power.

---

[20] *Hill v. Wallace*, 259 U.S. 44, 66 (1922); *see also Carter v. Carter Coal Co.*, 298 U.S. 238, 289 (1936).
[21] *Sonzinsky*, 300 U.S. at 513.
[22] *R. Cooter & N. Siegel, Not the Power to Destroy: An Effects Theory of the Tax Power*, 98 VA. L. REV. 1195, 1198 (2012) (emphasis added).

That matters for two reasons. First, Congress is one of limited powers, and when it acts ultra vires, it acts unconstitutionally. And second, beyond the Tenth Amendment problems that linger for any Congressional act outside of what Article I provides, if this is not a valid tax then it's also necessarily an impermissible "fee" that infringes on Morgan's Second Amendment rights.[23] After all, the $200 is not part of administering the program for Morgan exercising his rights; instead, the fee that he cannot pay is the guise for preventing him from exercising that right.[24] And that further shows § 5861's infirmity.

## II.     Conclusion

In the end, this case comes down to first principles and whether the "tax" that *Sonzinsky* upheld is the same one that is at issue today. That's what matters. And for the reasons expressed in the opening brief and here, it's not the same "tax" as the one the Supreme Court upheld almost a century ago. It's character and effect have changed and it now stands as a pure regulation, wrapped in the guise of a tax. As such, it is unconstitutional and so the indictment should be dismissed.

---

[23] *Murdock v. Pennsylvania*, 319 U.S. 105, 113 (1943); *Cox v. New Hampshire*, 312 U.S. 569, 576–77 (1941).

[24] *Fly Fish, Inc. v. City of Cocoa Beach*, 337 F.3d 1301, 1314–15 (11th Cir. 2003)

Dated at Madison, Wisconsin, this 9th day of April, 2024.

Respectfully submitted,

James Morgan, Defendant

*/s/ Jonathan Greenberg*
Jonathan Greenberg
Joseph A. Bugni
FEDERAL DEFENDER SERVICES
 OF WISCONSIN, INC.
22 East Mifflin Street, Suite 1000
Madison, Wisconsin 53703
Tel: 608-260-9900
Fax: 608-260-9901
jonathan_greenberg@fd.org

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC